I'm first today in number 2011-14-15, ENRE J-MED PHARMA. Mr. Fleming, are you ready? Good morning, your honors. May it please the court, my name is Porter Fleming, counsel for J-MED Pharmaceuticals. I would like to start off by reserving three minutes for rebuttal. Three minutes you want to reserve? Yes, yes. Very well. The issue before us today is we have raised three legal errors that we believe were committed by the board in affirming obviousness of rejections with respect to four claims in the Weinstein patent. Those are claims 2, 4, 11, and 13. All those claims are directed to at least five elements, including a first dosage, a second dosage, indicia, instructions, and a prefilled package that contains the indicia and the instructions and the dosages. The first error, we believe, is with respect to the claims 4 and 13. Claims in 4 and 13 require that the second dosage, the nighttime dosage, contain chlorofenaramine. Claims 4 and 13 are dependent claims. There are three references that have been cited against these two claims. They are the Knudsen reference, the Meltzer reference, and the Middleton reference. We believe that neither of those references, either individually or collectively, disclose the inventive features of claims 4 and 13. Specifically, and I guess when one combines them, they actually teach away from the invention. If you look at them, Knudsen, which is obviously in our appendix at A50, does not disclose chlorofenaramine as an antihistamine at all. Yeah, but when you combine it with Middleton, it does, right? Middleton does that, right? I agree. Middleton, the reference Middleton, does disclose chlorofenaramine. And so does Meltzer, right? And Meltzer discloses chlorofenaramine. But the problem with that combination, Your Honor, is that first of all, if you look at Middleton, Middleton discloses chlorofenaramine. However, Middleton was directed to a clinical trial. And in the clinical trial, it identifies issues with chlorofenaramine, specifically its sedation side effects. And then when it comes time to make the clinical trial product, instead of using chlorofenaramine, it uses diphenhydramine hydrochloride. And then if you look at the combination, which is what the Patent Office did with respect to Knudsen, Middleton, and Meltzer, and Your Honor identified Meltzer, Meltzer is a history of antihistamines. It identifies both first-generation and second-generation antihistamines. And when you look at the specific disclosure of chlorofenaramine, which is in the appendix at A56, it identifies a sedative life of 30 hours. And so that would not work in our invention. Our invention is directed to a product that has a first dose and a second dose, and the interplay between those doses is very important. That's the therapeutic regimen. I'm a little confused about these claims in terms of therapeutic regimen. Chlorofenaramine, you concede, is sedating to an extent, correct? Yes, Your Honor. Then how is that a dependent claim from a claim that claims a non-sedating first dosage antihistamine? I think chlorofenaramine is in the second dose, Your Honor. The second dose is the evening dose. In the evening dose, you want to have chlorofenaramine, which is part of the unique properties of chlorofenaramine, is that it provides a 4 to 6 to 8 hours of sedative effect and then a 24 hour antihistaminic effect. So the beauty of this product is that when you take the first dose in the morning, which is the decongestant, you have decongestive relief. And then when you take the night dose, you get sedation in the evening when you take chlorofenaramine. But then the antihistaminic effect continues in the next day, and so you get the benefit of that chlorofenaramine the next day. I saw in Meltzer, you said that Meltzer discloses a sedative effect of 30 hours. Now, I saw in Meltzer a reference to the 30 hours as being associated with dealing with symptoms of rhinitis, but I didn't see a reference to 30 hours of sedative effect. Did I miss something? Actually, Meltzer does not distinguish at all between any whether it's sedative. No, but it does not say. Am I correct that it does not say 30 hours of sedative effect? It says that you get 24 hours and the symptoms of allergic rhinitis for 30 hours using the wheel flare technique. But nothing about sedative effect for 30 hours, which is what you said. We believe, yes, it does not say the word sedative effect. However, the Middleton reference does talk about the added problems of sedation, and that was one of the problems with chlorofenaramine was the sedation, long sedation. So we believe that these three references cannot be combined to make claims 4 and 13, which are specific to chlorofenaramine. Our second issue is with respect to claims 2 and 11, which require that the second dose, the antihistamine, be non-sedating. Again, looking at the same three references which are cited against those claims, the Knudsen reference and the Middleton, there is no discussion of non-sedating antihistamines, period. And actually it goes against the teachings because both of those references are trying to balance a day medication and a night medication and put sedation at night. So here we have a product which addresses a concern with consumers who do have an issue with sedation, who don't want sedation at night. That is directly in contrast to both Knudsen and Middleton. Well, but Knudsen says, as the board points out, that when, as is often the case, a sedative action is desired at night. So the suggestion there certainly seems to be that that is true when you want a sedative effect, but not, presumably, when you don't. Isn't that the implication of that statement? This is at column 1, of course, you're familiar with it. I would argue, Your Honor, that the specific objective of Knudsen was to design a product that did not sedate people during the day and did sedate people at night. Right, but Knudsen, nonetheless, acknowledges that that's a strategy that would be applicable only if you desire sedation, which frequently you would, but not invariably, right? Isn't that the implication of that sentence? I'm looking at column 1, Your Honor, and it says, the second of these dosage units being indicated for nighttime administration and being sedative. Well, that's what it actually recites, but the question is, what does it teach? And it seems to me that the sentence that I read suggests that the teaching is that this is true if you need a sedative effect, or if that's desirable, the implication being that you wouldn't use the sedative antihistamine if you weren't looking for a sedative effect, right? I respectfully disagree, Your Honor, because, again, I go down to further column 1, line 26. It is understood that the sedative action, according to this invention, may be the desired sedative action of a sedative drug contained in the nighttime dosage use. All the claims require a sedative action. Your point, I guess, is that the spec may be broader than the claims. Sure. But my reading of Knudsen, and I think to a person of ordinary skill in the art, Knudsen discloses a stimulating decongestant during the day and a sedative antihistamine and decongestant in Knudsen at night. There is no disclosure of a non-sedating antihistamine, period, in Knudsen. I think that's admitted by the other side. Okay. The third legal error, well, let me just add on that. So you have Knudsen and Middleton that do not disclose non-sedating antihistamines at all. And then the only disclosure of a non-sedating antihistamine is the Middleton reference. And the Middleton reference, again, is a reference that gives you the history of antihistamines. There's no motivation, teaching, suggestion of combining chlorofenaramine with Knudsen and Middleton. Again, actually, we would say it teaches away. And then when one now knows the unique properties of chlorofenaramine, which are disclosed in our patent in Example 4 at Column 7 on A45, but the fact that you get an antihistaminic effect for 6 to 8 hours and then you get a sedation effect for 6 to 8 hours, an antihistamine effect for 24 hours, that is not disclosed anywhere. And I believe that is a unique property that differentiates and creates a situation where claims 2 and 11 are unpredictable and thus not obvious. The third legal error, we believe, Your Honor, is with respect to the product claims 2 and 4. And here we believe that the Patent Office and the Board were incorrect in oversimplifying the invention to be only a combination of an antihistamine and a decongestant. They deliberately ignored all the instructions that are claimed elements and we believe that the claim should be looked at in its entirety, all of the elements of the claim. And we believe that there are two cases cited on that point, the Nagai case and the Gerlach case. We believe the Gerlach case is right on point. Even if we agree with you that there is some functional relationship between the instructions and the product, doesn't that functional relationship still have to be a non-obvious functional relationship? We believe it is a non-functional obvious relationship. Yes, a tongue twister, thank you. But the product would not work if you took away the instructions. The instructions are functionally related, interconnected with both the indicia, the dosage and the instructions. Think of a package where you just have two pills. You wouldn't know when to take the pill. Do I take the pill in the morning, do I take the pill at night? How many pills do I take? The instructions are key. And so the case that the other side is relying on, the Patent Office, is the Nagai case and that was claim 19 of that patent and there you had the exact same kit. We do not have the exact same kit. There is no kit, prepackaged therapeutic regimen that exists in the prior art. So when one looks at all five elements, we believe... No, but in Nagai the instructions were how to prepare the kit and how to use it. How is that different from this case? Actually, when I first read Nagai, that was my understanding as well. I believe Nagai had both the components and instructions. So what was attempted to be patent were some additional instructions that were added. So yes, in Nagai you had a kit, you had all the components. It was admitted that the kit was there. It was a 102 rejection. It was anticipation. It was dead on. That's not what we have here. We don't have any therapeutic regimen that has what we have, the entirety of our claim. First dose, second dose, indicia instructions, prepackaged filled with the instructions. Well, but doesn't Newson keep those instructions though? Newson has instructions, but Newson doesn't have our second dose. The second dose in Newson is a decongestant and an antihistamine. We don't have a decongestant and an antihistamine in our second dose. Newson doesn't have chlorofenaramate. Newson does not have a non-sedating antihistamine. But if we were to assume that Newson didn't teach, let's say, another reference out there, taught the method consisting of taking a decongestant in the day and an antihistamine and specifically chlorofenaramate at night, the addition of instructions wouldn't be patentable subject matter, correct? Just to make sure we're on the same page. I agree that if you have the exact kit and you can't, you know, I have the patent on the flare pen and I add instructions to the flare pen. Right, take off the top and write with it. I agree I would not be entitled to a patent for the flare. I think we have a different situation here. I understand, but it all seems to me it just reduces back to your first two arguments, which is to say you're saying that these prior art references don't teach the patented invention. I don't see that you get any additional traction out of your written materials. Well, I think the point is that we should get some additional traction because if you oversimplify the claim, and now I've got to be quicker, if we oversimplify the claim just to a decongestant and antihistamine, we forget the indicia, the instructions, then we lose the whole point about when to take the product, the six to eight hours, and the long antihistaminic effect. And none of the prior art shows that, and that's why I believe the patent office had to do that. Very well, we will save the remainder of the rebuttal time, and we will hear from Mr. Piccolo. Thank you, Your Honor. May it please the Court. As to Appellant's position that people in this field likely expected chlorofeniramine to have a long sedation period, as the Board noted, Appellant submitted no evidence to that effect, that people in this field had an expectation that just because the chlorofeniramine drug worked on rhinitis and gave it therapy or suppressed the symptoms for 30 hours, there was no correlation that people would be asleep for 30 hours. There's no evidence either way on that, I take it, as to whether the short period of sedation associated with chlorofeniramine was something that was discovered by these inventors or was known previously. Nothing in the record reveals anything with respect to that question, correct? Almost, Your Honor. There's definitely no evidence about a sedation period being the same as the therapeutic period, and Appellant, as I said, did not submit that type of evidence. But these references actually suggest the opposite. Middleton said that you take chlorofeniramine or an antihistamine at night, but don't use it during the day. So that strongly suggests that people weren't going to sleep during the day. The drug would work, or the sedative side effect would be like 8 to 10 hours, a reasonable period of time, but don't take it during the day again. That's what Middleton says in Column 2. And so that suggests that because people woke up and then took the decongestant, that the antihistamine and chlorofeniramine is an example there, and the same thing with Meltzer that says take chlorofeniramine. It treats rhinitis, the exact problem that this applicant was facing. It treats rhinitis really well, and it will alleviate those symptoms for 30 hours. But those people who did that study too had to wake up the next day, the morning of. And so, therefore, it's very much against the reference to think that people would be sleeping 30 hours and yet they would still be doing those studies. So these references strongly suggest the opposite, but again, as the board found, he had the chance, he could have submitted unexpected results, evidence. He did not. The board had nothing to counterbalance against the strong prima facie case of the references as to chlorofeniramine being a very effective antihistamine against the precise problem at issue here, curing rhinitis. As to the non-sedating antihistamines, they came after the first generation antihistamines, of which chlorofeniramine was one. Chlorofeniramine's been around a very long time. The second generation antihistamines are shown in Meltzer as being really good antihistamines. They're second generation, they're new and improved, and they're non-sedating. And why might you want to have a non-sedating antihistamine at night is, for example, if you want the antihistamine benefit, such as, say, at 6 p.m. and maybe keep working during the night or driving a car or something like that, you would have the benefit that Meltzer expressly discloses from these non-sedating antihistamine drugs. I take it that what's associated with the non-sedating second generation antihistamines is not just that they're non-sedating, but also that there are other side effects that they don't have because of the biochemistry of the drug. And I would suppose that those other side effects might be undesirable in some cases. Is there any evidence in this record on that issue, the other side effects issue? No. Okay. All right. Well, then strike the question. Thank you, Your Honor. And so there are several reasons to use the non-sedating antihistamine that is expressly disclosed in Meltzer. And Meltzer talks about how great non-sedating antihistamines are. So that's, as the Board found, the motivation to make Claim 2. That's Claim 2, and I already talked about Claim 4, why chlorofeniramine was— Can I go back to Claim 4 for a second? Your logic has a facial appeal that obviously somebody has to wake up in the morning, so we assume that the sedation wears off. But there is also the fact that the decongestants are stimulating. So wouldn't it be true that perhaps the sedation would have a longer impact, but the decongestant offsets that? Well, that might be, Your Honor, and maybe there is a little bit of an overlap of the sedation period from the antihistamine at night to the next morning. But again, if J-Med had compiled some evidence to show a longer sedation period and he found—but didn't claim, it's actually not in the claim that his chlorofeniramine has such a short sedation period. So I think the gist of it is that the applicant had a good chance to compile test results and submit that data if what Your Honor was just talking about truly bore out. But again, the drug chlorofeniramine was being used by the people discussed in these two references, and that was enough substantial evidence for the board to make its motivation finding that this sets forth a prima facie case why someone would, with the known product of a daytime decongestant and a nighttime antihistamine that's disclosed in Middleton, and Knudsen has the container and the instructions and the indicia to just substitute. And this sets forth a prima facie case of chlorofeniramine as the antihistamine and a prima facie case of non-sedating as the type of antihistamine used. Middleton and Meltzer set forth that specific substantial evidence that the board relied on. But if I can follow up on Judge O'Malley's question— If there were that type of evidence, maybe. Right, but Knudsen, at least, discloses a combination of the antihistamine plus a decongestant, and the decongestant has counter-effects with respect to sedation, right? Yes, Your Honor. So if you change Knudsen by taking out the non-sedating quality of the antihistamine, then, as Judge O'Malley was suggesting, then all you're left with is this stimulating effect, which is not good at night. So that would suggest, to the extent that you view Knudsen as limited to a combination that includes a nighttime decongestant plus antihistamine, that it would suggest not a good idea for someone that is looking not to be awake all night. Your Honor, to that point, Knudsen— I think you pointed out during the appellant's opening— Knudsen is not limited to having a decongestant in the nighttime drug precisely because Knudsen says that, as is often the case, a sedation action is desired at night. And the board picked up on Knudsen saying that there, that there are reasons that are not often the case that you may not want to have a sedating drug at night. So Knudsen opens the door that you can have sedating at night or you might not want sedating at night. It's exam period. I'm sorry? It's exam period, for example. Yes. Or you've got to write a Federal Circuit brief really late at night. Or a sentence. And also to that point, Your Honor, there's substantial evidence in Meltzer at A60, column 2 at the bottom, that the board expressly relied on, that it was well known— and this is Meltzer in 1990— that decongestants cause stimulation. They may cause stimulation resulting in restlessness and insomnia. So, again, that's motivation to not have the decongestant at night and use just an antihistamine. And Middleton shows just an antihistamine at night, so that shores it up as well. If the court has no further questions, I'll take my seat. Certainly. Thank you, Mr. McClellan. Mr. Fleming. Thank you, Your Honor. Just briefly. I think it should also remind the court that with respect to the Middleton reference, even though there is a discussion of chlorofenaramine, at the end of the day, that was not the antihistamine that was used. And then, finally, I'd like to point out that a recent decision that's come down, Urine v. Mylan, I believe it's a Judge O'Malley case, it's very analogous, I think, and it's not in our brief because it came out afterwards, but when it talks about an initial disclosure, and in that case it was talk about PK and PD characteristics associated with cyclobenzaprine, we have a situation here where chlorofenaramine has certain properties. Those properties are not disclosed in any of these references. The patent office, the patent board, none of them can point to it, and that's what makes this a unique product. And for us to now be the burden on us to come forward and show that a prior art reference somehow doesn't disclose it. That's a really important point, and that is that, aside from the fact that urine is not my opinion, it's the opinion of the court. I'm sorry. But the important thing there is the record on which that case was being analyzed and who had the burden. In this particular instance, you had the opportunity to come forward with information. The board does not have the same burden that a challenger would have in district court in challenging the validity of an already issued patent. So why didn't you come forward with information to establish what one skilled in the art would have understood from these prior art references? We believe we have, Your Honor, and if you look at what's disclosed in actually our patents, and specifically example four at column seven on page 845, we go into the unique properties of chlorfenaramine, which are not disclosed in any of the three references that the patent office rely on. So it was not known in the public. And so that's why I think the patent office and the board have to oversimplify our invention down to just it's an antihistamine and a decongestant combined together. They ignore the unique properties of chlorfenaramine, and they ignore the fact that with respect to the non-sedating claims, again, that's not in the three references. Are those properties actually claimed? Excellent question, Your Honor. And the answer to that is chlorfenaramine is claimed, and chlorfenaramine, we are entitled to the properties of chlorfenaramine, but you cannot distinguish the product and its properties. So, yes, to the extent we disclose the property and we specifically claim chlorfenaramine, which has those properties, we believe that those claims, four and 13, do have those specific properties associated with chlorfenaramine. Likewise, claims two and 11 have non-sedating as a second dose, and none of the references disclose that. And we believe that to have been an error, and we would like to see that undone. Very well. Thank you, Mr. Fleming. We thank both counsel, and the case is submitted. We will hear argument next in number 2011.